UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DEWAYNE JOAQUIN RICHARDSON,

                           Plaintiff,

             -v-

CITY OF NEW YORK, ERICKS RODRIGUEZ,
CARLOS PAGAN, and WILSON QUILES,

                           Defendants.

17 Civ. 8622 (PAE) (RWL)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

    *Pro se* plaintiff Dewayne Joaquin Richardson brings this action against New York City (the "City"), Police Detective Ericks Rodriguez, Police Detective Carlos Pagan, and Sergeant Wilson Quiles (collectively, the "individual defendants," and, together with the City, "defendants"). Richardson alleges that defendants violated his constitutional rights by falsely arresting him and maliciously prosecuting him, in violation of § 1983 and New York State law, after his then-girlfriend accused him of assault and robbery. He has not served the individual defendants in this case, the time to do so has long since passed, and they have not appeared in the action. The City, the sole defendant against whom Richardson has proceeded, has moved for summary judgment as to all of Richardson's claims.

    Before the Court is the August 24, 2020 Report and Recommendation of the Honorable Robert W. Lehrburger, United States Magistrate Judge, recommending that the Court grant the motion for summary judgment in its entirety and dismiss this case. *See* Dkt. 94 ("Report"). For the following reasons, the Court adopts that recommendation.

I.  **Background**

The Court incorporates by reference the summary of the facts provided in the Report. *See* Report at 2–6. For purposes of addressing Richardson's objections, however, the Court briefly summarizes those facts here.

On December 9, 2016, Jaqueline Smalls—Richardson's then-girlfriend—called 911 to report that Richardson had assaulted and robbed her inside their shared apartment while carrying a firearm. *See* Dkt. 83 ("Def. 56.1") ¶ 1. According to the Complaint Report, Smalls identified Richardson by name and description as the perpetrator, and the two lived together. *See* Dkt. 82-5 ("Compl. Rep.") at 2–3. Richardson denies that he had taken anything from Smalls or that he assaulted her. *See* Dkt. 82-2 ("Richardson Tr.") at 108–09. After contacting the police, Smalls sought medical attention due to stomach and back pain and was escorted by an ambulance to the hospital. Def. 56.1 ¶ 4–5.

On December 10, 2016, the individual defendants, who had not yet met Smalls, went to the shared apartment to gather details about the incident. *Id.* ¶ 8. When they arrived, they obtained a key from the attendant at the front desk of the apartment complex, and accessed the apartment without seeking further consent. Dkt 87 ("Richardson Aff.") ¶ 3. Because Smalls remained in the hospital overnight, Richardson was alone in the apartment when they arrived. Def. 56.1 ¶ 9. When the individual defendants encountered Richardson, he identified himself and acknowledged that he lived in the apartment, and the officers asked him to come to the precinct with them. *Id.* ¶ 10; Richardson Aff. ¶ 5. After he refused, the individual defendants pushed their way into the apartment, handcuffed Richardson, and placed him under arrest for robbery in the second degree. Def. 56.1 ¶ 10; Richardson Aff. ¶ 5. Incident to that arrest, the individual defendants searched the apartment without a warrant. Richardson Aff. ¶ 5.

Later that afternoon, the individual defendants met with Smalls for the first time at the hospital. Def. 56.1 ¶ 13. At that meeting, Smalls reiterated that Richardson had threatened her with a firearm the day before, and she signed a consent form permitting the officers to conduct a "complete and full search of [the] apartment" to locate the weapon and gave them a key to access the apartment. *Id.* ¶ 15; Rodriguez Aff. ¶¶ 6–7.

At the precinct that same day, a warrant search revealed that Richardson had an active parole warrant, which had issued in November 2016. Def. 56.1 ¶¶ 11–12. According to Richardson, it had been issued after he failed to report to his parole officer. Richardson Tr. at 45; *see also* Def. 56.1 ¶ 12 ("plaintiff continuously failed to report to his parole officer").

Richardson was charged with first- and second-degree robbery for the December 9, 2016 incident, and he was arraigned on December 11, 2016. Def. 56.1 ¶ 16. On December 16, 2016, the grand jury was adjourned, and on March 1, 2017, the robbery charges were dismissed. *Id.* ¶¶ 17, 19. Richardson, however, remained incarcerated due to the active parole warrant issued by New York State. *Id.* ¶ 20. According to Richardson, he was ultimately released after he "did a year violation" due to the parole warrant. Richardson Tr. at 45.

On November 7, 2017, Richardson sued the City pursuant to 42 U.S.C. § 1983, alleging, *inter alia*, false arrest, hardship, defamation of character, and a violation of the Fourteenth Amendment. *See* Dkt. 2 ("Compl.") at 2. On April 26, 2018, Richardson filed an amended complaint, adding Pagan and Rodriguez as defendants, adding a claim under the Sixth Amendment, and dropping his hardship and defamation claims. *See* Dkt. 16 ("FAC"). On June 26, 2018, Richardson again amended his complaint, this time to include Quiles. *See* Dkt. 25 ("SAC"). However, Richardson never served any of the individual defendants after naming them in the SAC, and the time to do so has now expired. *See* Fed. R. Civ. P. 4(m).

3

On November 6, 2018, the Court referred this case to Judge Lehrburger for general trial supervision. Dkt. 35. On December 2, 2019, after the City requested a pre-motion conference in anticipation of a motion for summary judgment, the Court referred that motion, too, to Judge Lehrburger for a report and recommendation. *See* Dkt. 73.

On January 27, 2020, the City moved for summary judgment, *see* Dkt. 80, and filed a memorandum in support, Dkt. 89 ("Def. Mem."); a Local Civil Rule 56.1 Statement, *see* Def. 56.1; and the declaration of Adria J. Bonillas, Esq., *see* Dkt. 82 ("Bonillas Decl."), with accompanying exhibits. On March 19, 2020, Richardson opposed the City's motion, *see* Dkt. 86 ("Pl. Opp'n"), and filed his own affidavit, Richardson Aff., and Local Civil Rule 56.1 Statement, *see* Dkt. 88 ("Pl. 56.1"). On April 20, 2020, the City replied. *See* Dkt. 89 ("Def. Reply").

On August 24, 2020, Judge Lehrburger issued the Report, recommending that the Court grant the City's motion for summary judgment and dismiss this case in its entirety. *See* Report at 28. On September 9, 2020, the Court received Richardson's objections to the Report. Dkt. 95 ("Objections"). On September 24, 2020, the City responded. *See* Dkt. 96 ("Def. Resp.").

## II.     Legal Standard

### A.     Report and Recommendation

In reviewing a report and recommendation, a district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). To accept the portions of a report to which no timely objection has been made, "a district court need only satisfy itself that there is no clear error on the face of the record." *Acevedo v. Lempke*, No. 10 Civ. 5285 (PAE) (HBP), 2014 WL 4651904, at *3 (S.D.N.Y. Sept. 17, 2014) (quoting *King v. Greiner*, No. 02 Civ. 5810 (DLC), 2009 WL 2001439, at *4 (S.D.N.Y. July 8, 2009)). When a timely and specific objection has been made, the court is obligated to review the contested issues de novo. *See id.*; *see also*

Fed. R. Civ. P. 72(b)(3); *Hynes v. Squillace*, 143 F.3d 653, 656 (2d Cir. 1998). But when the objections simply reiterate previous arguments or make only conclusory statements, the court may review the Report for clear error. *Dickerson v. Conway*, No. 08 Civ. 8024 (PAE) (FM), 2013 WL 3199094, at *1 (S.D.N.Y. June 25, 2013); *see also Kirk v. Burge*, 646 F. Supp. 2d 534, 538 (S.D.N.Y. 2009) (collecting cases). This is so even in the case of a *pro se* plaintiff. *See Dickerson*, 2013 WL 3199094, at *1; *Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009).

B.   **Summary Judgment**

To prevail on a motion for summary judgment, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears the burden of demonstrating the absence of a question of material fact. In making this determination, the Court must view all facts "in the light most favorable" to the non-moving party. *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008).

If the movant meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted). Rather, to survive a summary judgment motion, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).

"Only disputes over facts that might affect the outcome of the suit under the governing law" will preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*,

5

477 U.S. 242, 248 (1986). In determining whether there are genuine issues of material fact, a court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).

**III.    Discussion**

Liberally construed, Richardson's SAC alleges constitutional violations against all defendants under § 1983, as well as state law claims for false arrest and malicious prosecution against the individual defendants. The City argues that no evidence supports a municipal claim against the City, that Richardson's claims against the individual defendants must be dismissed because those defendants were never served, and, independently, that the latter claims fail because they are not supported by competent evidence.

The Report agrees with the City on each point, and recommends the grant of summary judgment on all claims against all defendants. Richardson objects only to the Report's conclusions regarding the individual defendants' conduct. He has not addressed the viability of his claims against the City. Accordingly, the Court reviews the latter only for clear error, *see Acevedo*, 2014 WL 4651904, at *3, and, although Richardson's objections are largely conclusory or reprise arguments already considered and rejected in the Report, reviews the former *de novo*.

    **A.    Claims Against New York City**

"[A] municipality can be held liable under Section 1983" only if "the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978)); *Cash v. County of Erie*, 654 F.3d 324, 333 (2d Cir. 2011) ("[M]unicipalities are responsible only for their own illegal acts, and cannot be

6

held vicariously liable under § 1983 for their employees' actions." (citation omitted)). To state such a "*Monell* claim" against the City, therefore, Richardson must prove three elements: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (quoting *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)).

The Report thoroughly reviews Richardson's claims and the evidence supporting them, and concludes that "there is no evidence by which a reasonable jury could find the City liable by way of policy, custom, or otherwise" for the actions of the individual defendants. Report at 14. Careful review of Judge Lehrburger's well-reasoned analysis reveals no facial error in that conclusion. The Court therefore adopts the Report's recommendation as to the City and grants the City's motion for summary judgment as to Richardson's claims against the City.

### B. Claims Against the Individual Defendants

As Judge Lehrburger noted, Richardson's failure to serve any defendants other than the City makes dismissal of Richardson's municipal claims mandatory, and is a sufficient basis for granting the City's motion in its entirety. Report at 14; *see* Fed. R. Civ. P. 4(m) ("If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time."); *Barbosa v. City of New York*, No. 16 Civ. 7340 (LTS), 2018 WL 4625620, at *2–3 (S.D.N.Y. Sept. 26, 2018) (citing *Bogle-Assegai v. Connecticut*, 470 F.3d 498, 508 (2d Cir. 2006)) (dismissing *pro se* plaintiff's claims for failure to serve individual defendants, including those with actual notice of the complaint against them). However, because the parties and the Report address these claims at some length, and Richardson's objections exclusively challenge the Report as it relates to such claims, the Court briefly addresses those objections.

7

### 1. False Arrest

The Report recommends granting summary judgment as to Richardson's false arrest claim on two grounds: (1) his arrest was supported by probable cause; and (2) the individual defendants are entitled to qualified immunity. Report at 15, 21. Reviewing the summary judgment record and the parties' contentions *de novo*, the Court agrees.

"The existence of probable cause to arrest constitutes justification and 'is a complete defense to an action for false arrest,' whether that action is brought under state law or under § 1983." *Jenkins v. City of New York*, 478 F.3d 76, 84–85 (2d Cir. 2007) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)). "When information is received from a putative victim or an eyewitness, probable cause exists unless the circumstances raise doubt as to the person's veracity." *Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) (citation omitted); *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) ("[I]t is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness, unless the circumstances raise doubt as to the person's veracity." (citation omitted)).

Meanwhile, even absent probable cause to arrest the plaintiff, an officer will be entitled to qualified immunity if "arguable probable cause" existed—*i.e.*, if "a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in the light of well[-]established law." *Cerrone v. Brown*, 246 F.3d 194, 202–03 (2d Cir. 2001) (citation omitted); *see Shaheed v. City of New York*, 287 F. Supp. 3d 438, 449 (S.D.N.Y. 2018). The doctrine of qualified immunity provides a complete defense where "either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991).

Here, before Richardson's arrest, Smalls identified and described Richardson as her assailant and told the police that, after she had refused to give him money, he kicked and punched her and forcibly stole her pocketbook. *See* Def. 56.1 ¶¶ 1–3; *see also* Compl. Rep. at 2–3. These facts suffice to establish probable cause for his arrest. *See Panetta*, 460 F.3d at 395.[1] In his objections, Richardson attempts to cast doubt on the individual defendants' account of events by questioning their motives for visiting his apartment the morning of his arrest. *See, e.g.*, Objections at 1 (asking why the officers would have gone to the shared apartment knowing that Smalls was in the hospital). None of these accusations as to the individual defendants' subjective motives, however—even were they supported by evidence in the summary judgment record—diminish the probable cause supporting Richardson's arrest arising from Smalls's allegations. Reviewing the record *de novo*, the Court finds that the individual defendants' arrest of Richardson was amply supported by probable cause—and, *a fortiori*, "arguable probable cause." Accordingly, the Court grants defendants' motion for summary judgment as to that claim.[2]

---

[1] In New York, a person is guilty of robbery in the first degree if he forcibly steals property and either (1) causes serious physical injury to any person who is not a participant in the crime; (2) is armed with a deadly weapon; (3) uses or threatens the immediately use of a dangerous instrument; or (4) displays what appears to be a firearm. *See* N.Y. Penal Law § 160.15. Similarly, a person is guilty of robbery in the second degree if he forcibly steals property and (1) causes physical injury to a person not participating in the crime; or (2) displays what appears to be a firearm. *Id.* § 160.10.

[2] At points in his opposition to summary judgment and his objections, Richardson also appears to contend that the warrantless arrest in his home was an unlawful seizure. *See, e.g.*, Objections at 2 ("The defendant[s] violated the threshold law when Plaintiff told them that he would not go with them, and they forced [their] way in. There was no warrant for Plaintiff['s] arrest on robbery and assault charges."). On the record before the Court, a preserved and substantiated claim to that effect could potentially gain traction under the case law. *See United States v. Allen*, 813 F.3d 76, 78, 82 (2d Cir. 2016) ("[W]e conclude that where law enforcement officers have summoned a suspect to the door of his home, and he remains inside the home's confines, they

### 2. Malicious Prosecution

For similar reasons, the Report also recommends granting summary judgment as to Richardson's malicious prosecution claims, both because probable cause supported the prosecution and because the prosecution did not terminate in Richardson's favor. The Court also agrees with the Report's assessment of this issue and grants summary judgment to the defendants on Richardson's claims for malicious prosecution.

To establish a claim for malicious prosecution under New York State law, a plaintiff must show that: "(1) the defendant initiated and continued a criminal proceeding against him; (2) the proceeding terminated in plaintiff's favor; (3) there was no probable cause for that proceeding; and (4) the defendant commenced the criminal proceeding with malice." *Smith v. City of New York*, 388 F. Supp. 2d 179, 186 (S.D.N.Y. 2005); *see also Jocks v. Tavernier*, 316 F.3d 128, 136 (2d Cir. 2003). In addition, to sustain a § 1983 malicious prosecution claim, a plaintiff must further show "a seizure or other perversion of proper legal procedures implicating [his] personal liberty and privacy interests under the Fourth Amendment." *Lanning v. City of Glens Falls*, 908 F.3d 19, 24 (2d Cir. 2018) (quoting *Washington v. County of Rockland*, 373 F.3d 310, 316 (2d Cir. 2004)).

Just as "probable cause is a complete defense to a constitutional claim of false arrest, and false imprisonment, . . . continuing probable cause is a complete defense to a constitutional claim

---

may not effect a warrantless 'across the threshold' arrest in the absence of exigent circumstances," even if they have "ample probable cause"). However, although the Report did not have occasion to squarely address this issue, defendants counter that entry into Richardson's apartment was lawful given the consent—or at least the apparent consent—they had received from the landlord who gave the officers a key to the apartment. *See* Def. Reply at 9–10. The Court does not have occasion to resolve whether such a defense of consent would prevail, because the individual defendants have not been served, and because Richardson's *Monell* claim against the City (including as to the theory of a municipal practice of illegal entries in violation of the Fourth Amendment) lacks evidentiary support.

10

of malicious prosecution." *Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014) (citation omitted). The same is true under New York law. *See Russell v. Smith*, 68 F.3d 33, 36 (2d Cir. 1995). Thus, "when a court finds there was probable cause for an arrest, and in the absence of some indication that the authorities became aware of exculpatory evidence between the time of the arrest and the subsequent prosecution that would undermine the probable cause which supported the arrest, no claim for malicious prosecution may lie." *Johnson v. City of Mount Vernon*, No. 10 Civ. 7006 (VB), 2012 WL 4466618, at *5 (S.D.N.Y. Sept. 18, 2012); *see Rizzo v. Edison, Inc.*, 172 F. App'x 391, 393–94 (2d Cir. 2006) (summary order) ("As no exculpatory evidence became known after Plaintiff's arrest, there was also probable cause to prosecute her.").

Here, as explained above, there was probable cause to arrest Richardson. And he has not alleged that any exculpatory facts came to light between his arrest and when the charges against him were ultimately dropped—let alone facts sufficient to clearly vitiate the probable cause. On the contrary, after Richardson's arrest, Smalls provided additional *inculpatory* information to the individual defendants when they visited her in the hospital, informing them that "[Richardson] pointed a firearm at her and threatened her with it when he took her wallet" and showing them the bruises on her arms and body described in the earlier report. *See* Dkt. 82-6 ("Rodriguez Aff.") ¶¶ 4–5. If anything, the evidence against Richardson was stronger at the time of prosecution than when he was arrested.

Summary judgment is also warranted on Richardson's § 1983 claim for malicious prosecution because the record lacks evidence to support the conclusion that the "proceeding terminated in plaintiff's favor." *Smith*, 388 F. Supp. 2d at 186. "[P]roceedings are 'terminated in favor of the accused' only when their final disposition is such as to indicate the accused is not guilty." *Lanning*, 908 F.3d at 26 (quoting *Singleton v. City of New York*, 632 F.2d 185, 193

11

(2d Cir. 1980)).  Thus, "[w]hen a person has been arrested and indicted, absent an affirmative indication that the person is innocent of the offense charged, the government's failure to proceed does not necessarily 'impl[y] a lack of reasonable grounds for the prosecution.'"  *Id.* at 28 (quoting *Conway v. Village of Mount Kisco*, 750 F.2d 205, 215 (2d Cir. 1984)).  Here, the record does not disclose why the charges against Richardson were dropped, and therefore does not support this element of Richardson's claim.  Richardson does not put forward a viable argument to the contrary.

Summary judgment on Richardson's § 1983 malicious prosecution claim is further required because he cannot show that the defendants' actions implicated his "personal liberty and privacy interests under the Fourth Amendment," given the independent basis for his detention provided by his parole violation.  *Id.* at 24.[3]  Richardson argues that the defendants caused him to be detained longer than he otherwise would have been on his parole violation.  *See* Pl. Opp'n ¶¶ 10–13.  But, according to Richardson's own deposition testimony, he was incarcerated for a full year on his parole violation.  Richardson Tr. at 44–45.  In contrast, the period between his arrest and the dismissal of the robbery charges was only 82 days.  *Id.* at 44.  Thus, as the Report correctly concludes, for the entire duration of Richardson's robbery prosecution, his parole violation supplied an independent, legitimate basis supporting his detention.  Report at 28; *see United States v. Santa*, 180 F.3d 20, 27 (2d Cir. 1999).  He therefore cannot show that any alleged malicious prosecution impaired his liberty interests under the Fourth Amendment.

---

[3] As the City notes in its response to Richardson's objections, the Report addresses this issue in the context of Richardson's freestanding claim under the Due Process Clause—raised for the first time in his opposition to summary judgment—not his malicious prosecution claim under § 1983.  *See* Def. Resp. at 8 n.7; Report at 27–28.  The Court agrees with the City that this defect provides an independent basis for rejecting Richardson's malicious prosecution argument under § 1983, and with the Report that this similarly forecloses Richardson's due process argument.

12

In his Objections, Richardson claims that his parole violation did not supply an independent basis for his detention because "parole was not going to do nothing until the disposition of the case" and because he could have "use[d] the same technicality to beat the violation" had he not been arrested on the robbery charges. Objections at 2–3. But Richardson does not supply any authority, and the Court is aware of none, supporting the proposition that such speculation about the practical likelihood of apprehension or enforcement can undermine an otherwise legitimate and independent basis for detention.

### 3. Additional Claims

Richardson raises several additional claims for the first time in either his opposition to summary judgment or his objections to the Report. First, he claims for the first time in his opposition that his due process rights were violated by his pre-trial detention on the armed robbery charges at issue. *See* Report at 27–28; Pl. Opp'n ¶¶ 10–13. Second, he states in both his opposition and his objections that he would like to "add" defamation and slander claims, which he thought he had included in the SAC. *See* Pl. Opp'n ¶ 5; Objections at 3. Finally, he claims for the first time in his objections that "when Plaintiff was not produced [a]t the grand jury . . . , that was a violation of" his due process rights. Objections at 2.

As to Richardson's due process claim, he argues that the defendants' alleged false arrest and malicious prosecution caused him to be detained longer than he otherwise would have been on his parole violation, and therefore violated his due process rights. *See* Pl. Opp'n ¶¶ 10–13. This claim fails for two reasons. First, as the Report notes, whether Richardson was unlawfully detained as a result of the defendants' actions goes only to damages. It does not provide a basis for liability under the Due Process Clause. *See Wallace v. Kato*, 549 U.S. 384, 390 (2007) (after arraignment, "unlawful detention forms part of the damages for the 'entirely distinct' tort of malicious prosecution" (citation omitted)).

13

Second, as discussed above, Richardson's post-arrest detention was justified on grounds independent of the robbery charges against him: the separate warrant for his arrest on a parole violation. *See* Def. 56.1 ¶¶ 11–12; Richardson Tr. at 44–45.  Even had robbery charges never been filed against Richardson, his detention still would have been justified as a result of that separate and independently legitimate arrest warrant.

Next, the Report correctly rejects Richardson's belated slander and defamation claims. *See* Report at 11 n.8.  As the Report recognizes, although Richardson included a defamation claim in his original complaint, he dropped that claim in both his FAC and SAC.  *See id.* Because "[i]t is well established that an amended complaint ordinarily [supersedes] the original, and renders it of no legal effect," Richardson may not belatedly assert such claims at the summary judgment stage.  *Dluhos v. Floating & Abandoned Vessel, Known as "N.Y."*, 162 F.3d 63, 68 (2d Cir. 1998) (citation omitted); *see Forziano v. Indep. Grp. Home Living Program, Inc.*, 613 F. App'x 15, 17 (2d Cir. 2015) (summary order).  Even if he could do so, the Court agrees with the Report's conclusion that there is no evidence in the summary judgment record to support any such claim.  Summary judgment is therefore appropriate on that claim, too.

Last, the Court declines to entertain Richardson's claim regarding his right to appear before the grand jury.  *See* Objections at 2.  Federal Rule of Civil Procedure 72(b) does not permit a litigant to raise new claims at this late juncture.  *See e.g.*, *Clarke v. United States*, 367 F. Supp. 3d 72, 77 (S.D.N.Y. 2019) ("Due to the fact that 'new claims may not be raised properly at this late juncture,' such claims should be dismissed."); *Ramos v. Johnson*, No. 09 Civ. 0899 (LEK) (DEP), 2011 WL 807430, at *2 (N.D.N.Y. Mar. 2, 2011) ("To the extent that Plaintiff's Objections seek to reopen discovery, add additional claims, name additional parties, or excuse his non-response to Defendants' Motion for summary judgment,

14

they are improper, untimely, and, in any event, wholly conclusory and insufficient to survive summary judgment."); *Gonzalez v. Garvin*, No. 99 Civ. 11062, 2002 WL 655164 (SAS), at *2 (S.D.N.Y. Apr. 22, 2002) (dismissing objection "because it offers a new legal argument that was not presented in his original petition, nor in the accompanying Memorandum of Law"); *see also Abu-Nassar v. Elders Futures, Inc.*, No. 88 Civ. 7906 (PKL), 1994 WL 445638, at *4 n.2 (S.D.N.Y. Aug. 17, 1994) (rejecting arguments advanced for the first time in a party's objections to a magistrate judge's report because permitting such claims would "undermine the authority of the Magistrate Judge by allowing litigants the option of waiting until a Report is issued to advance additional arguments").  Accordingly, the Court gives this untimely submission no consideration.

## CONCLUSION

For the foregoing reasons, the Court grants defendants' motion for summary judgment and dismisses Richardson's claims in their entirety.  The Clerk of Court is respectfully directed to terminate the motion pending at docket 80, and to close this case.

The Court further respectfully directs the Clerk of Court to mail a copy of this decision to plaintiff at his new address, provided at page 4 of docket 95, and to update the address on file accordingly.

SO ORDERED.

                                              *Paul A. Engelmayer*
                                          PAUL A. ENGELMAYER
                                          United States District Judge

Dated: September 29, 2020
       New York, New York